CLEVELAND TARGET CO. *et al. v.* UNITED STATES PIGEON Co. *et al.*

(*Circuit Court, N. D. Ohio, W. D.* May 21, 1892.)

No. 1,045.

1. PATENTS FOR INVENTIONS—ANTICIPATION—MOTION FOR PRELIMINARY INJUNCTION—FLYING TARGETS.

Letters patent No. 225,261, issued March 9, 1880, to Orator F. Woodward, are for a "new and useful improvement in compositions of matter for making molded articles of manufacture," such as flowerpots, vases, cuspidores, etc. Flying targets or "birds," though not specified by the patentee, were made in large numbers under the patent. The composition consisted of gypsum and rosin mixed under heat. *Held,* on motion for a preliminary injunction against one manufacturing targets from a like compound, that the patent was not anticipated by certain previous compounds from which flying targets had never been made, and from which the patentees never contemplated that they would be made.

2. SAME—MOTION FOR PRELIMINARY INJUNCTION—ESTOPPEL.

In a suit for infringement of a patent, it appeared that defendant was formerly in the employ of complainant, and, while sustaining that relation, gave testimony as an expert in its behalf supporting the validity of the patent, and, by actual process of manufacture before the court, demonstrated the novelty and utility of the invention. *Held,* on a motion for a preliminary injunction, that he was in no position to deny the validity of the patent.

In Equity. Bill by the Cleveland Target Company and Orator F. Woodward against the United States Pigeon Company and others for infringement of a patent. On motion for a preliminary injunction. Granted.

*E. A. Angell,* for complainants.

*J. B. Fay,* for respondents.

RICKS, District Judge. The complainants file their bill in this case to secure an adjudication as to the validity of the patent No. 225,261, dated March 9, 1880, issued to Orator F. Woodward, of Le Roy, N. Y., and now ask for a preliminary injunction against the defendant, restraining it from the manufacture of flying targets or "birds," which they claim to be an infringement of the patent set forth in the bill. The patent sued upon was before this court in the case of *Peoria Target Co.* v. *Cleveland Target Co.*, and its scope and utility were fully commented upon in an opinion delivered on May 27, 1890, in that case. 47 Fed. Rep. 725. The complainant in that case relied upon the validity of letters patent No. 334,782, granted to Fred. Kimble, January 26, 1886, for a new and useful improvement in making targets. One of the defenses set up in that case was that the complainant's patent was not novel; that neither the process nor the article specified constituted a patentable invention; and that a process for making a similar compound had been described in a prior patent issued to Orator F. Woodward, in 1880. In the case referred to the court, in referring to the complainant's patent, said:

"The Woodward patent of March 9, 1880, was intended to produce a composition of matter which could be molded into various articles of fine texture, glazed surface, very cheap and strong. The ingredients described were gypsum and rosin, mixed under heat. The right to use pitch as a substitute for

rosin was claimed in the patent. The specifications and claims set forth in that patent cover the very product now under consideration in this patent. The ingredients are exactly the same, and the product described covers the target in this case. The only change effected is that the target produced under the Kimble patent is fragile, while the molded product of the Woodward patent is strong and substantial. A slight change in the proportions of the ingredients produced the desired result. This was not a discovery, within the meaning of the patent laws. It was not an invention. It was merely combining materials described in several earlier patents, and conspicuously in the Woodward patent; and this combination was not made on any scientific basis, or any fixed proportion, but was to be varied as the quantity of oil in the pitch might make necessary. This requires no scientific knowledge. It is ' but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice,' and comes within the rule defined by Mr. Justice MATTHEWS in *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717."

With this *quasi* adjudication of the validity of the Woodward patent, the complainants now file their bill, and seek to maintain the validity of said patent, and establish an infringement on the part of the defendants. The Woodward patent, while not claiming on its face to be an improvement for the making of flying targets, or flying pigeons or blackbirds, as they are sometimes called, does claim it to be a "new and useful improvement in compositions of matter for making molded articles of manufacture," specifying flowerpots, vases, cuspidores, etc., as illustrating the character of the articles to be made under the process described in the patent. But it appears from the evidence that the compound described in the Woodward patent was actually used in making flying targets. In 1882 several thousand of such targets were made under the Woodward patent, and publicly used in the state of New York and elsewhere. The defendant claims that complainants' title is not perfect, and sets forth a large number of anticipating patents, several of which it claims describe a composition out of which flying targets could be made as successfully as out of the compound described in the Woodward patent. But it is sufficient answer to this to say that none of the compounds described in these several patents were ever used for any such purpose. The articles described to be made under these several patents were all articles so entirely different in construction, form, and proportions of material from the flying targets as to make it plain that the patentees in those cases never contemplated that their compounds could be varied or should be varied, to make the peculiar structure required for the flying targets under the complainants' patent sued on in this case. In fact, in most of the patents set forth in defendants' answer and affidavits, very opposite qualities to those essential to successful flying targets were set forth in the patents as pertaining to the articles manufactured and covered by said patents. I do not think, within the meaning of *Clough* v. *Manufacturing Co.*, 106 U. S. 178, 1 Sup. Ct. Rep. 198, that these patents ever anticipated the complainants' device. The complainants' patent, though not describing a compound expressly

intended for the construction of flying targets, did in fact contain ingre-dients which, with a few changes, have made very superior flying tar-gets, probably as successful and popular as any put upon the market. The compound described in said patent has in fact been so successfully used in the manufacture of flying targets that now some 12,000,000 are made annually. This is the highest evidence of its usefulness and adap-tation to this kind of manufacture. The public have accepted and used it as meeting a general want. I think, therefore, for the purposes of this motion, that we may accept the patent as embracing a novel and useful invention. I think the complainants' title to this patent is clearly established.

But the defendant is in no position now to defend as to the question of validity. The defendant Damm, who is the promoter, principal offi-cer, and active manager of the defendant corporation, was originally in the employ of the complainant. While sustaining such relations to it, he asserted the validity of the patent sued upon in this case, was an ex-pert witness in this behalf, and demonstrated before this court, by actual process of manufacture, the utility of the invention, and in various ways so committed himself to the validity of this patent that I do not think he is in any position now to controvert it. There can be no question of the infringement. It is thoroughly established, and I think, under all the circumstances of the case, the complainants are entitled to a prelim-inary injunction, and a decree may be drawn accordingly.